UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

MACEY SONGER and )
WILLIAM SONGER, individually )
and as next of kin of Chad William )
Songer, deceased, )
        *Plaintiffs*, )
)
v. ) Case No. 1-22-cv-00022-CHS
)
CHASE ROBERTS, individually and in )
his official capacity, MATTHEW BROCK, )
individually and in his official capacity, and )
BLEDSOE COUNTY GOVERNMENT, )
        *Defendants*. )

## MEMORANDUM OPINION AND ORDER

### I.    Introduction

Defendants Deputy Matthew Brock, Deputy Chase Roberts, and Bledsoe County Government ("Bledsoe County") move for summary judgment [Doc. 39] in this action brought by Plaintiffs, Macey Songer and William Songer as next of kin of Chad William Songer ("Mr. Songer"), who died after an encounter with a police dog. Plaintiffs bring claims arising from this encounter for "an unreasonable seizure in violation of the Fourth Amendment and/or the Fifth and Fourteenth Amendments" under 42 U.S.C. § 1983 and for assault and battery and negligence under Tennessee law.[1] For the reasons stated herein, Defendants' motion for summary judgment is **GRANTED** in its entirety, and this action is dismissed with prejudice.

---

[1] Plaintiffs bring claims arising from Chad Songer's death under Tennessee law pursuant to Tennessee's wrongful death statute, Tenn. Code Ann. § 20-5-106. Tennessee's wrongful death statute "does not create a new cause of action for the beneficiaries but instead preserves the right of action of the decedent." *Lynn v. City of Jackson*, 63 S.W. 3d 332, 336 (Tenn. 2001); *Zakour v. UT Medical Group, Inc*., No. W2010-01499-COA-R3CV, 2011 WL 2084088, at * 3 (Tenn. Ct. App. May 19, 2011). Consequently, the Court will analyze and discuss Plaintiffs' state law wrongful death claim in conjunction with Plaintiffs' additional state law claims of assault and battery and negligence.

1

## II. Facts

In reviewing a motion for summary judgment, the Court views all facts and reasonable inferences drawn therefrom in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The facts as iterated here are taken directly from Plaintiffs' Response to Defendants' Motion for Summary Judgment. [Doc. 46].

> On January 31, 2021, Deputies Matthew Brock and Chase Roberts, both of the Bledsoe County Sheriff's Office, decided to serve arrest warrants for failing to pay child support and violation of probation conditions (driving on suspended) on Chad Songer. Mr. Songer was chopping wood with an ax in the yard of his home when contacted by the deputies.
>
> Upon contact with Mr. Songer, deputies told him he was under arrest for warrants and demanded he drop the ax. Mr. Songer passively resisted, was non-responsive to several verbal commands, and did not drop the ax. According to Plaintiffs' Expert Report, deputies were within 10 to 15 feet of Mr. Songer during the encounter. Deputy Roberts left Deputy Brock alone with Mr. Songer to retrieve a K9 from Deputy Roberts [sic] patrol vehicle. Deputy Roberts returned to the scene and told Mr. Songer to drop the ax or he would be bit [sic] by the K9. Mr. Songer took between four and six steps towards Deputy Roberts, still carrying the ax. When Mr. Songer stepped towards Deputy Robert [sic], the deputy released the K9. Mr. Songer threw the ax toward the K9. The K9 pursued and eventually bit Mr. Songer on the leg.
>
> After the bites, the paramedics were called to the scene at 1641 hours and began hospital transport of Mr. Songer at 1650 hours. At 1723 hours, the medic ceased emergency medical efforts and Mr. Songer was pronounced deceased. An autopsy was later performed The autopsy attributed Mr. Songer's death to methamphetamine toxicity and a dog bite.

[Doc. 46, Plaintiffs' Response at 1-2].

## III. Discussion

### A. Standard of Review

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A material fact is one

2

that matters—i.e., a fact that if found to be true, might affect the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The applicable substantive law provides the frame of reference to determine which facts are material. *Id*. A genuine dispute exists with respect to a material fact when the evidence would enable a reasonable jury to find for the non-moving party. *Id*.; *Jones v. Sandusky Cnty*, 541 Fed. Appx. 653, 659 (6th Cir. 2013).

In deciding whether a dispute is genuine, the Court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson*, 477 U.S. at 249. Instead, the Court must view the facts and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports v. Eliadis Inc.,* 253 F.3d 900, 907 (6th Cir. 2001).

The moving party bears the initial burden of demonstrating no genuine issue of material fact exists. *Celotex Corp., v. Catrett*, 477 U.S. 317, 323 (1986); *Jones*, 541 F. App'x at 659. The moving party discharges its burden by either producing evidence that demonstrates the absence of a genuine issue of material fact, or by simply showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp*. 477 U.S. at 325. To refute such a showing, the non-moving party must present some significant, probative evidence to support his or her claim. *Id*. at 322. The mere existence of a scintilla of evidence is not enough; there must be evidence on which a fair-minded jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 251-52.

B.  **Section 1983 Claims Against Deputies Matthew Brock and Chase Roberts**

1. **Overview**

Section 1983 is a remedial statute which does not itself create independent substantive legal rights. Section 1983 simply provides a vehicle by which a person may impose civil liability on

3

state actors for a violation of rights secured to him by federal law. *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollam*, 443 U.S. 137, 140 (1979)); *see also Cash v. Hamilton Cnty. Dep't of Adult Probation*, 388 F.3d 539, 542 (6th Cir. 2004). To establish a claim under Section 1983, a plaintiff is required to show that he has been deprived of a right, privilege, or immunity secured to him by the United States Constitution or other federal law and that the defendants caused the deprivation while they were acting under color of state law. *D.O. v. Glisson*, 847 F.3d 374, 377 (6th Cir. 2017); *Gregory v. Shelby Cnty.,* 220 F.3d 433, 441 (6th Cir. 2000); *Baker v. Hadley,* 167 F.3d 1014, 1017 (6th Cir. 1999)). There is no dispute that Deputies Brock and Roberts were acting under color of law when they attempted to arrest Mr. Songer. The dispute centers on whether the deputies violated Mr. Songer's rights under the Fourth and Fourteenth Amendments to be free of unreasonable seizures.

The Fourth Amendment prohibits government actors from engaging in unreasonable search and seizure of persons, houses, papers, and effects. *Soldal v. Cook Cnty*, 506 U.S. 56, 61 (1992). The Fourth Amendment applies to the states through the Fourteenth Amendment. *Soldal v. Cook Cnty*, 506 U.S. 56, 61 (1992). Use of excessive force to effect an arrest is an unreasonable seizure in violation of the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989); *see also Shumate v. City of Adrian*, 44 F.4th 427, 440 (6th Cir. 2022); *Williams v. Maurer*, 9 F.4th 416, 438 (6th Cir. 2021); *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).

In their response to Defendants' motion for summary judgment, Plaintiffs assert two separate claims: (1) Deputies Brock and Roberts subjected Mr. Songer to excessive force by releasing the police dog on him; and (2) the two deputies acted unreasonably by failing to have emergency medical services on hand to treat Mr. Songer's bite injuries when they unleashed the police dog on him. [Pl.s' Response at 7]. The Court will address these two claims in inverse order.

## 2. Section 1983 Claim for Deliberate Indifference to a Serious Medical Need

Plaintiffs' second claim is that the deputies failed to have emergency medical services ready and available when they unleashed the police dog on Mr. Songer. This claim should be characterized as a claim for deliberate indifference to a serious medical need. The Court notes that Plaintiffs did not raise this claim in their complaint. Rather, the language in Plaintiffs' complaint describing their Section 1983 claim is as follows:

> The acts of Chase Roberts and Matthew Brock in unleashing a K9 attack dog on an unarmed man who posed no imminent threat to them constitute an unreasonable seizure in violation of the Fourth Amendment and/or the Fifth and Fourth Amendments of the United States Constitution and violated clearly established law, which police officers in their position would have known.

[Doc. 1, Complaint ¶ 22]. The complaint does not contain any factual allegations—specific or conclusory—to the effect that Deputies Brock and Roberts violated any constitutional standards by failing to ensure that appropriate medical assistance was available for Mr. Songer either before or after they released the police dog. Further, Plaintiffs never moved to amend their complaint to add such a claim.

While federal law recognizes, generally, constitutional claims brought under the Fourteenth Amendment against state officers for deliberate indifference to serious medical needs of an arrestee, *see e.g., Vaughn v. City of Lebanon*, 18 F. App'x 252, 272-76 (6th Cir. 2001), such a claim must be raised in the *complaint*. *Id*. at 271-72. Plaintiffs' assertion that Defendants Brock and Roberts violated Mr. Songer's rights—by not anticipating his potential injuries and assuring that appropriate medical care would be available—amounts to a claim of deliberate indifference to a serious medical need in violation of the Fourteenth Amendment. It is not a claim of excessive force in violation of the Fourth Amendment. Attempting to raise an unpled deliberate indifference claim for the first time, in response to a motion for summary judgment, as Plaintiffs have done here, is

improper. *See Vaughn*, 18 F. App'x at 271-72 (where complaint failed to state a claim under the Fourteenth Amendment for deliberate indifference to serious medical needs and arrestee made no attempt to amend his complaint to add such a claim, the district court properly refused to consider such a claim) (citing *Welch v. Delta Air Lines, Inc.*, 978 F. Supp. 1133, 1138 (N.D.Ga.1997) ("Plaintiff cannot change its theory of the case (in an effort to avoid summary judgment) after Defendant moves for summary judgment.") The Court concludes Plaintiffs have not stated a claim in their complaint against any defendants for deliberate indifference to Mr. Songer's serious medical needs, and the Court will therefore not consider such a claim.

3. **Plaintiffs' Excessive Force Claim**

As indicated above, Plaintiffs also claim that Deputies Brock and Roberts subjected Mr. Songer to excessive force by releasing a police dog on him. In response, Deputies Brock and Roberts assert that they are entitled to qualified immunity. The doctrine of qualified immunity shields government officials from personal liability, thereby "ensur[ing] that fear of liability will not unduly inhibit officials in the discharge of their duties . . . so long as they have not violated a 'clearly established' right." *Camreta v. Greene*, 563 U.S. 692, 705 (2011) (internal citations omitted); s*ee also Martin*, 712 F.3d at 957 ("Qualified immunity protects public officials from liability for civil damages if their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'") (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

In examining whether officers are entitled to qualified immunity, courts use a two-step process, looking at whether the officers did, in fact, use excessive force, and, if so, whether this use of excessive force violated clearly established law. *See Shumate v. City of Adrian*, 44 F.4th

427, 439 (6th Cir. 2022) (using two-step analysis).[2] Once a defendant asserts that he is entitled to qualified immunity, the plaintiff bears the burden to show that the officer's conduct violated clearly established law. *See Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021).

So, employing the two-step process, the Court must first examine whether the deputies used excessive force against Mr. Songer before turning to the issue of whether the particular use of excessive force violated clearly established law. As a preliminary matter, where more than one officer is alleged to have violated a person's constitutional rights, "'[e]ach defendant's liability must be assessed individually based on his own actions[.]'" *Hart v. Hillsdale Cnty.*, 973 F.3d 627, 639 (6th Cir. 2020) (quoting *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010)). This Court "must analyze separately" whether Plaintiffs have "stated a plausible constitutional violation by each individual defendant" and "cannot ascribe the acts of all Individual Defendants to each individual defendant." *Heyne v. Metro Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011).

### i. Deputy Matthew Brock

There is no evidence that Deputy Matthew Brock controlled or released the police dog. To the contrary, Deputy Chase Roberts is the officer alleged to have released the police dog against Mr. Songer in this case. Because Deputy Roberts' conduct cannot be ascribed to Deputy Brock (or, in other words, Deputy Brock is not liable for Deputy Roberts' conduct), there is no proof that Deputy Brock engaged in excessive force against Mr. Songer. Consequently, summary judgment should be granted in favor of Deputy Brock.

---

[2] In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court mandated that a court analyzing the defense of qualified immunity should do so "in the proper sequence." *Id.* at 200. ["T]he first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established, the question whether the right was clearly established must be considered. . . ." *Id.* at 201. However, in *Pearson v. Callahan*, 555 U.S. 223 (2009), the Court reconsidered the sequence required by *Saucier* and held that this sequence is no longer mandated; a court *may* consider first whether a constitutional right has been violated based on the facts alleged or it may consider first whether the alleged constitutional right was clearly established. *Id.* at 236.

7

### ii. Deputy Chase Roberts

Given the fact that Deputy Roberts controlled and released the police dog against Mr. Songer, the Court now directs its analysis to the issue of whether Deputy Roberts employed excessive force. The Constitution permits an officer to use reasonable force to arrest a suspect. *Graham v. Connor*, 490 U.S. 386, 396 (1989) ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.") Whether an officer's use of force in making an arrest violates the Fourth Amendment is a question of whether his actions are "objectively reasonable in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Shumate*, 44 F.4th at 440; *see also Martin*, 712 F.3d at 958 (citing *Graham,* 490 U.S. at 388). The Court must examine the reasonableness of the force at the time it is used from the perspective of a reasonable officer on the scene—not with 20/20 hindsight. *Shumate*, 44 F.4th at 440; *Martin*, 712 F.3d at 958.

To assist the Court in examining the "reasonable of the force" utilized, there are three factors enumerated in *Graham v. Connor* that the Court must consider, *to wit*: "(1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the officer or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Shumate v. City of Adrian*, 44 F.4th 427, 440 (6th Cir. 2022) (citing *Graham*, 490 U.S. at 396); *see also Jarvela v. Washtenaw Cnty*, 40 F.4th 761, 764 (6th Cir. 2022) (holding courts must consider the amount of force used in light of the three *Graham* factors). These three factors, however, are not exhaustive and, ultimately, the totality of the circumstances must justify the "'particular seizure' that took place." *Shumate*, 44 F.4th at 440. As is always the case when analyzing a claim alleging a violation of the Fourth Amendment, the touchstone is objective reasonableness: were the officer's

actions objectively reasonable? *Id.* Each case must be considered individually based on its particular facts and circumstances, "viewed from the perspective of a reasonable officer" based on the facts known to that officer at the time. *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (citing *Graham*, 490 U.S. at 396–97).

"Deployment of a well-trained police dog is '[a]mong the various forms of force available to law enforcement, that is a comparatively measured application of force, which does not carry with it a substantial risk of causing death or serious bodily harm.'" *Puskas v. Delaware Cnty.,* 56 F.4th 1088, 1094 (6th Cir. 2023)) (quoting *Jarvela*, 40 F.4th at 764). Unfortunately, lack of "substantial risk" does not mean elimination of *all risk*. Here, Mr. Songer died unexpectedly following his encounter with the police dog.

In determining whether utilization of a police dog to effect the arrest of a suspect constitutes excessive force, the Court "must balance the government's interests in protecting others (including the police) and curbing crime against a suspect's right not to be injured" by the police dog. *Puskas*, 56 F.4th at 1093-94. In doing so, this Court looks to the three *Graham* factors from the perspective of a reasonable law enforcement officer at the scene. *Id.* at 1094.

The first *Graham* factor relates to the severity of the crime at issue. Here, the two deputies arrived at Mr. Songer's residence to arrest him for unpaid child support and for a violation of his probation restrictions resulting from driving on a suspended license. The *original reason* for the arrest did not involve a severe or violent crime. Consequently, when the two deputies arrived at the residence, they had no reason to suspect that Mr. Songer might be violent. When the deputies first encountered Mr. Songer, he was chopping wood with an ax. Initially, the deputies' actions

9

were restrained. The police dog was still in the vehicle when the deputies approached Mr. Songer about his outstanding arrest warrants. They stopped about 15 feet from Mr. Songer, and, for their own safety, the deputies instructed Mr. Songer to put down his ax. It was only after Mr. Songer refused to drop the ax that Deputy Robert retreated back to his vehicle to retrieve the police dog.

When Deputy Roberts returned from the vehicle to the area where Deputy Brock was standing, he again instructed Mr. Songer to put down the ax—this time warning him that, if he refused to comply with this instruction, he would be bitten by the police dog. Instead of heeding the deputies' commands, Mr. Songer advanced on the deputies—taking four to six steps in their direction—while brandishing the ax. It was in response to the threat presented by Mr. Songer's aggression that Deputy Roberts released the police dog.

To be clear, the police dog was not utilized against Mr. Songer because he was being served with arrest warrants for unpaid child support or probation violations; rather, the dog was employed against him because, when confronted with the arrest warrants, he advanced on the two deputies while brandishing a deadly weapon and failing to heed their commands. At that point, Mr. Songer was actively resisting arrest and he presented an immediate threat of death or serious bodily injury to the deputies.

As indicated above, in the *Graham* case—when considering the reasonable of the force utilized—the Court is instructed to analyze: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the officer or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. Here, the Court finds that the Mr. Songer was in the act of committing an extremely severe crime when he advanced aggressively toward the deputies with an ax in his hands and ignored their commands to relinquish his weapon. Further,

there is no question that his actions posed an immediate threat to the deputies. Finally, the facts establish that Mr. Songer was actively resisting arrest.

The Sixth Circuit has found that releasing a police dog to arrest a suspect is not excessive force where: (1) the suspect was warned a dog would be used; (2) the suspect refused to surrender; and (3) the suspect posed a threat to the safety of the police officer or others. *Robinette v. Barnes*, 854 F.2d 909, 913-14 (6th Cir.1988); *see also Puskas v. Delaware Cnty*, 56 F.4th 1088, 1094-99 (6th Cir. 2023). In the recent case of *Puskas v. Delaware County*, the Sixth Circuit affirmed the district court's holding that use of a police dog to arrest a suspect was reasonable when: (1) police were dispatched to a home on a domestic violence call; (2) police instructed the suspect to surrender and warned the suspect, "[y]ou're gonna get bit if you don't comply," *id.* at 1094; and (3) the suspect refused to surrender, instead running toward the house where police knew firearms were located.[3] *Id*. at 1093-95. Thus, when police released the dog, they had warned the suspect the dog would be released if he did not surrender, the suspect refused to surrender, and the suspect presented an imminent threat to the officers. *Id.*

The instant case meets all three criteria found in *Puskas*. Deputy Roberts warned Mr. Songer that the dog would be released if he did not put down the ax. Mr. Songer refused to relinquish the ax. And Mr. Songer then advanced toward the deputies with the ax, putting them in imminent danger of death or serious bodily injury. The Court concludes that Deputy Roberts' release of the police dog in response to Mr. Songer's actions was reasonable under the

---

[3] After police had released the dog and after the suspect ran toward the house, he stopped, picked up a black case in the yard and pulled out a pistol. The officers then shot and killed the suspect. While the instant case does not involve a shooting death, the *Puskas* Court analyzed separately the use of the police dog and the use of firearms against the suspect. *See id.* at 1093 – 95, discussing use of police dog, and *id.* at 1095-99, discussing shooting suspect. Thus, the Court finds its analysis as to the use of the police dog to be applicable to the instant case.

11

circumstances. Accordingly, the Court will also grant summary judgment as to Plaintiffs' Section 1983 claim for excessive force against Deputy Chase Roberts.[4]

### C. State Law Claims Against Deputies Matthew Brock and Chase Roberts for Assault and Battery

As with the Section 1983 excessive force claim, because the undisputed facts demonstrate that Deputy Brock did not control or release the police dog, Plaintiffs' claim for assault and battery against him arising from release of the dog will be dismissed with prejudice.

The Court will now consider the assault and battery claim as it applies to Deputy Roberts. In Tennessee, assault and battery is an intentional tort requiring an "unpermitted touching of the plaintiff by the defendant or by some object set in motion by the defendant." *Brown v. Christian Bros. Univ.*, 428 S.W. 3d 38, 58 (Tenn. Ct. App. 2013). However, a police officer is not liable for assault and battery where the officer uses reasonable force against a suspect to make an arrest. *Christian Bros. Univ.*, 428 S.W. 3d at 58; *Munson v. Bryant*, No. 3:15-cv-78, 2016 WL 4045396, at *16 (M.D. Tenn. July 28, 2016); *Djahspora v. City of Jackson*, No. 1:15-cv-01269-JDT-egb, 2016 WL 4702432, at *8 (W.D. Tenn. Aug. 30, 2016). Because the Court has previously found Deputy Roberts acted reasonably under the circumstances in releasing the dog, the Court also finds that he cannot be held liable for the intentional tort of assault and battery.

---

[4] The Court acknowledges Sixth Circuit precedent holding that attacks by a police dog can constitute excessive force when a poorly trained dog is deployed on an already restrained suspect or without warning. *See e.g., White v. Harmon*, No. 94–1456, 1995 WL 518865, at *3 (6th Cir. Aug. 31, 1995) (canine handler could be held liable for excessive force where the handler brought a little-trained dog to an arrest scene and failed to prevent the dog, which had a history of biting at the wrong time, from biting the plaintiff who had already been handcuffed); *Zuress v. City of Newark*, 815 F. .App'x. 1, 7 (6th Cir. 2020) ("When we have concluded that a constitutional violation occurred in canine excessive-force cases, there was typically 'a poorly trained dog that attacked suspects without warning or command.'") (citing *Ashford v. Raby*, 951 F.3d 798, 803 (6th Cir. 2020)). Plaintiffs have not alleged that the police dog in this case was improperly trained; that Mr. Songer was already restrained; or that he was not warned the dog would be released if he failed to comply with police commands.

### D. Claims Brought against Bledsoe County

#### 1. Claim for Monell Liability under 42 U.S.C. § 1983

Plaintiffs allege that Bledsoe County is liable to them under Section 1983 for the death of Mr. Songer, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978) and its progeny because it "has maintained a policy, custom, or practice of deliberate indifference to the hiring, training, supervision or discipline of the police officers knowing that those police officers would come into contact with citizens who were unarmed or otherwise posed no imminent threat to them," [Doc. 1, Complaint ¶ 25, *see also* ¶¶ 25-26], and that said policy, custom or practice was the direct and proximate cause of Mr. Songer's death [*Id.* at ¶ 27]. The Court, however, already has concluded that Deputies Brock and Roberts did not violate Mr. Songer's constitutional rights. And it is well settled that a governmental entity (e.g., city or county) cannot be held liable under Section 1983 where its officers have committed no underlying constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 811 (1986); *Bruederle v. Louisville Metro Government*, 687 F.3d 771, 777 (6th Cir. 2012)). For that reason, Plaintiffs' Section 1983 claim against Bledsoe County shall be dismissed.

#### 2. Claim for Negligence under Tennessee Law

Plaintiffs allege that Bledsoe County negligently hired, trained, supervised and disciplined Deputies Brock and Roberts and that this negligence resulted in the deputies' use of excessive force which directly and proximately caused Mr. Songer's death. [Doc. 1, Complaint ¶ ¶ 39-42]. Bledsoe County asserts that it is immune from this negligence claim.

The Tennessee General Assembly codified the "general common law rule that 'all governmental entities shall be immune from suit for any injuries which may result from the activities of such governmental entities'" in the Governmental Tort Liability Act ("GTLA").

13

Case 1:22-cv-00022-CHS   Document 61   Filed 08/13/24   Page 13 of 17   PageID #: 461

*Limbaugh v. Coffee Cnty. Medical Ctr.,* 59 S.W. 3d 73, 79 (Tenn. 2001) (quoting Tenn. Code Ann. § 29-20-201(a)). Notwithstanding this general immunity from suit, the GTLA specifically waives a governmental entity's immunity for negligence actions. Tenn. Code Ann. § 29-20-205. This waiver of immunity is not, however, universal because the GTLA—specifically, Tenn. Code Ann. § 29-20-205(1)-(10)—also enumerates certain exceptions to this waiver. *Id.* The issue before the Court concerns the "civil rights" exception. Section 205 states in relevant part:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
>
> \* \* \*
>
> (2) False imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or *civil rights* . . .

(Emphasis added).

Bledsoe County asserts it is immune from Plaintiffs' negligence claim because the injury at issue arose out of Mr. Songer's arrest, and Plaintiffs' claims against Deputies Brock and Roberts are principally characterized as a violation of Mr. Songer's civil rights. Consequently, Bledsoe County argues, Plaintiff's negligence claim against Bledsoe County falls within the civil rights exception found in Section 205(2). Plaintiffs counter that their negligence claim against Bledsoe County arose out of the deputies' *assault* of Mr. Songer and since assault is *not* one of those specifically enumerated exceptions to the general waiver of immunity found in Section 205, Bledsoe County has no immunity for Plaintiffs' negligence claim. In support of their argument, Plaintiffs rely on *Limbaugh v. Coffee County Medical Center,* 59 S.W. 3d 73, 79 (Tenn. 2001).

In *Limbaugh*, the Tennessee Supreme Court held that there is no exception to the GTLA's general waiver of immunity for negligence claims where the injury arises from an assault and

battery. *Limbaugh*, 59 S.W. 3d at 84. In *Limbaugh*, a conservator brought suit against a county-owned nursing home for negligently failing to protect a nursing home resident from assault by an employee with a known propensity for violence. Because Section 205 does not specifically and explicitly exempt assault from its general waiver of immunity, the Tennessee Supreme Court held the conservator could proceed against the county nursing home with his negligence claim. *Id.*

*Limbaugh* is inapposite to this case, however, as *Limbaugh* did not involve an assault which arose out of alleged police misconduct. It is the alleged police misconduct that distinguishes this case from a negligence claim where the injury arises from an assault. *See Mosier v. Evans*, 90 F.4th 541 (6th Cir. 2024). In *Mosier*, the plaintiff sued a deputy who allegedly used excessive force to control him by slamming him into the concrete floor of the jail after his arrest. The plaintiff also sued the county which employed the deputy for vicarious liability and for negligent hiring, training, supervision and retention of the deputy which, plaintiff alleged, led to his injury.

Examining Tennessee precedent, the *Mosier* court held that the county was immune from these claims because the civil rights exception to the GTLA's waiver of immunity applied. In so holding, the *Mosier* court reasoned that, under Tennessee law, where an action against a county is "based on the same facts" as a civil rights claim or "is sufficiently related to an accepted civil-rights claim," then the civil rights exception applies. *Id.* at 553. The court further explained that plaintiff's own characterization of his claim does not control, *id.* at 553; it is the gravamen of the action that determines whether the civil rights exception applies. *Id.* at 554. Since the gravamen of Mosier's negligence claim against the county was that the deputy used excessive force in controlling the plaintiff, the vicarious liability and negligence claims were "sufficiently related to a civil rights claim to be barred by the civil rights exception, regardless of Mosier's characterization." *Id.*

15

The recent case of *Siler v. Scott*, 591 S.W. 3d 84, 97 (Tenn. Ct. App. 2019), discussed by the *Mosier* court, is also instructive. In *Siler*, the plaintiff alleged he was beaten and tortured by Campbell County, Tennessee, deputies in a futile effort to coerce him into signing a warrant before he was arrested. The plaintiff brought an action in state court alleging, *inter alia*, the deputies assaulted and battered him in violation of state law. The plaintiff also sued Campbell County under Tennessee's GTLA alleging Campbell County employees had negligently trained and supervised the deputies which led to their assaulting him.[5] Because the injuries the plaintiff suffered allegedly stemmed from police misconduct, the *Siler* court concluded that the county's immunity was preserved under the civil rights exception, found in Section 205(2), to the general waiver of immunity. *Siler*, 591 S.W.3d at 97-98.

Numerous courts which have addressed the civil rights exception as it applies to injuries allegedly arising from police misconduct have reached the same conclusion, even where the alleged misconduct also amounts to an assault under Tennessee law. *See e.g., Johnson v. City of Memphis*, 617 F.3d 864, 871-72 (6th Cir. 2010); *Campbell v. Anderson Cnty*, 695 F. Supp.2d 764, 778 (E.D. Tenn. 2010); *Cochran v. Town of Jonesborough*, 586 S.W.3d 909, 920 (Tenn. Ct. App. 2019); *Nichols v. Metro. Nashville Airport Auth.*, No. M2020-00593-COA-R3-CV, 2021 WL 1426992, at *5 (Tenn. Ct. App. April 15, 2021).

In the instant case, the gravamen of Plaintiffs' action is that Deputies Brock and Roberts engaged in misconduct, i.e., they used excessive force in arresting Mr. Songer, giving rise to his death. Plaintiffs' claim against Bledsoe County for negligent hiring, training, discipline, and supervision—which allegedly lead to the deputies' use of excessive force—is a claim sufficiently related to a civil rights claim to be barred by the civil rights exception – notwithstanding Plaintiffs'

---

[5] According to the *Siler* Court, the plaintiff brought a separate suit in federal court under 42 U.S.C. § 1983 alleging violations of this federal constitutional rights. *Id.* at 92.

attempts to characterize Mr. Songer's death as arising from an assault. Accordingly, the Court will dismiss Plaintiffs' negligence claim against Bledsoe County.

## IV. Conclusion

For the reasons stated herein, it is hereby **ORDERED** that:

1. Defendant's Motion for Summary Judgment on behalf of Defendants Deputy Matthew Brock, Deputy Chase Roberts, and the Bledsoe County Government, is **GRANTED**;

2. This lawsuit is **DISMISSED WITH PREJUDICE** in its entirety.

3. **JUDGMENT SHALL BE ENTERED** in favor of Defendants.

**SO ORDERED.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE